IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHESHIRE BRIDGE HOLDINGS,
LLC, et al.,

    Plaintiffs,

      v.

CITY OF ATLANTA, GEORGIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:15-CV-3148-TWT

## OPINION AND ORDER

This is a First Amendment zoning case. It is before the Court on the
Defendant City of Atlanta, Georgia, et al.'s Motion for Summary Judgment [Doc.
37] and the Plaintiffs Cheshire Bridge Holdings, LLC and Cheshire Visuals,
LLC's Motion for Partial Summary Judgment [Doc. 39]. For the following
reasons, the Defendant City of Atlanta, Georgia, et al.'s Motion for Summary
Judgment [Doc. 37] is GRANTED, and the Plaintiffs' Motion for Partial
Summary Judgment [Doc. 39] is DENIED.

## I. Background

The Plaintiffs collectively own and operate Tokyo Valentino, an "8,000 sq.
ft. adult toy store sitting adjacent to a 10,000 sq. ft. videoplexx and swinger

club," at 1739 Cheshire Bridge Road, Atlanta, Georgia.[1] The Property is zoned commercially and consists of a three-level office building that includes a basement, a main level, and a second level above a portion of the building.[2] The Property is also located within 500 feet of areas that are zoned R-4 residential.[3] The Property's location and proximity to a residential area has been the source of conflict between the parties, including this action, for over twenty years.

In 1996, Michael Morrison, hoping to open an adult retail store in Atlanta, noticed a loophole in the City's zoning code. The version of the Code in effect at the time, which had been originally adopted in 1977 and most recently been amended in 1987 (the "1987 Code"), prohibited "adult businesses" from operating within 500 feet of a residential district.[4] The term "adult businesses" encompassed adult bookstores, adult motion picture theaters, adult mini-motion picture theaters, adult cabarets, and adult entertainment establishments.[5] The 1987 Code specifically defined all of these terms. Importantly, however, none of

---

[1]     Defs.' Statement of Undisputed Material Facts ¶¶ 1, 44, 45 ("Defs.' SOF"). The building is owned by Cheshire Bridge Holdings, LLC, while the business itself is operated by Cheshire Visuals, LLC. Both are owned by FEG Holdings, LLC. *Id.* at ¶ 47.

[2]     *Id.* at ¶ 1. In 1996, the Property was zoned C-2, while it is now zoned NC-4. *Id.* at ¶¶ 1, 4.

[3]     *Id.* at ¶ 2.

[4]     *Id.* at ¶ 5.

[5]     *Id.* at ¶ 6.

the 1987 Code's definitions included the sale of sex toys or sexually explicit videos.[6]

Noting this discrepancy, Morrison sent a letter on November 27, 1996, to the City outlining his plan for an adult retail store at the Property.[7] Morrison said that his planned retail outlet would "sell no adult books, or have adult video viewing rooms," and that it would "only sell novelties, cards, CD-ROM, video, lingerie (not live), and condoms."[8] Structuring the business this way avoided the 1987 Code's restrictions on adult businesses and allowed it to operate in any area zoned for commercial use – including the Property – regardless of its proximity to residential areas.

A few days after Morrison sent the letter, Cheshire Visuals submitted its formal business license application to the City on December 2, 1996.[9] That same day, the City adopted Ordinance No. 96-O-1012 (the "1996 Amendments"), which amended the 1987 Code relative to adult businesses. In particular, these 1996 Amendments changed the definition of "adult bookstore" to include the sale of sexually explicit "films, videos, or other medium, or novelty items" and removed adult businesses from the list of permitted uses in C-1 and C-2 zoning

---

[6]     *Id.* at ¶ 7.

[7]     *Id.* at ¶ 10.

[8]     Defs.' Answer to Am. Compl., Ex. 5 [Doc. 30-5].

[9]     *Id.* at ¶ 11.

districts.[10] Based on these amendments, City staff denied Cheshire Visuals' business license application.[11]

Cheshire Visuals challenged that decision in Fulton County Superior Court, arguing that "it was entitled to issuance of the business license based on the zoning requirements that existed at the time the application was filed."[12] The Superior Court agreed that the City should have used the 1987 Code as it existed prior to the 1996 Amendments, but it did not make a decision as to whether or to what extent Cheshire Visuals' application should be approved.[13] Instead, the Superior Court remanded the matter "to the City's Business License Bureau for a determination as to whether Plaintiff's application for a business license met the requirements in existence at the time it was filed."[14] Pursuant to the Superior Court's order, the City eventually approved Cheshire Visuals' application for a general retail store that included "adult video sales, novelties, [and] toys."[15]

In February 1998, Cheshire Visuals finally opened the retail store that would eventually come to be known as Tokyo Valentino. Later that same year,

---

[10]    *Id.* at ¶¶ 18-19.

[11]    *Id.* at ¶ 21.

[12]    *Id.* at ¶ 22.

[13]    *Id.* at ¶¶ 23-24.

[14]    *Id.* at ¶ 23.

[15]    *Id.* at ¶ 27.

on December 2, 1998, Cheshire Visuals filed suit against the City in federal court seeking damages from the lengthy delay caused by the City's denial of its license application. Cheshire Visuals argued that the City violated its "rights to due process, equal protection, and free speech and that Defendant's actions amounted to a taking for which Plaintiff was not justly compensated."[16] The Court observed that Cheshire Visuals did "not challenge the constitutionality of either the old or the new zoning ordinance. Rather, it contend[ed] that its rights were violated when the [1996 Amendment] was improperly applied in [the City's] decision to deny Plaintiff's application for a business license."[17] The Court ultimately disagreed with Cheshire Visuals and granted summary judgment to the City.

For many years, this was the end of the story. But in 2014, Cheshire Bridge Holdings applied for building permits to renovate the Property.[18] Following neighborhood feedback, the City sent inspectors to the Property to investigate the Plaintiffs' activities.[19] The investigators found that the Plaintiffs were conducting a number of activities which the City claims were not approved by their original business licenses. For example, the City found that in addition

---

[16]     *Cheshire Visuals, LLC v. The City of Atlanta, Georgia*, No. 1:98-CV-3461-JOF at 1 (N.D. Ga. Feb. 22, 2001), *aff'd*, 281 F. 3d 1285 (11th Cir. 2001).

[17]     *Id.* at 5.

[18]     Am. Compl. ¶ 23.

[19]     *Id.* at ¶ 24.

to operating the adult-focused retail store on the ground level, Tokyo Valentino was also operating a "videoplexx" downstairs in the basement of the Property.[20] The videoplexx includes 20 video booths, open and private "play rooms," and a locker room.[21] Tokyo Valentino provides sexually explicit videos that patrons can pay to watch on small video screens in the video booths.[22] Similar sexually explicit videos also play on a television in the videoplexx locker room.[23] Many of the video booths are also designed with "glory holes," and both the City's investigators and Tokyo Valentino employees have reported multiple instances of patrons engaging in sexual activity in the video booths.[24] Cheshire Visuals has admitted that it has operated these video booths since the beginning of the store's operation.[25]

As a result of its investigation, the City issued a violation correction notice that ordered Tokyo Valentino to "cease and desist" its adult video booth operations in the basement.[26] The Plaintiffs appealed that notice to the City's

---

[20] Defs.' SOF ¶ 51.

[21] *Id.* at ¶ 60.

[22] *Id.* at ¶ 65.

[23] *Id.* at ¶ 66.

[24] *Id.* at ¶¶ 67-72, 75-81.

[25] *Id.* at ¶ 37.

[26] Defs.' Mot. for Summ. J., Ex. 34 [Doc. 38-16].

Board of Zoning Appeals, which upheld the correction notice.[27] The Plaintiffs then filed this action on September 8, 2015, alleging that the current version of the City Code violates its First Amendment rights to freedom of speech and seeking an injunction and a writ of certiorari. The City then counterclaimed, alleging that the Plaintiffs have been in violation of the 1996 Code since they opened. The City seeks declaratory judgments finding that Cheshire Visuals' business license did not approve the operation of an adult business and that Cheshire Visuals forfeited any lawful nonconforming use rights by doing so. The City also seeks a permanent injunction prohibiting the Plaintiffs from operating an adult business at the Property. The City now moves for summary judgment on all claims. The Plaintiffs, meanwhile, move for summary judgment only as to their constitutional claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[28] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[29] The party seeking summary judgment

---

[27]     *Id.*, Ex. 29 [Doc. 38-11].

[28]     FED. R. CIV. P. 56(a).

[29]     *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

must first identify grounds to show the absence of a genuine issue of material fact.[30] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[31] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[32]

## III. Discussion

### A. Plaintiffs' Free Speech Claims

The Court begins with the Plaintiffs' free speech claims. The Plaintiffs' Amended Complaint asserts that the City is violating their First Amendment rights in four ways:

> (a) Code § 15-28(b), as applied to a "Sexually Oriented Business," fails to mandate prompt decision-making by the licensing authority;
>
> (b) the City's definitions of adult business are unconstitutionally overbroad because any place where a patron is charged to view entertainment "which consists of persons exhibiting or modeling lingerie or similar undergarments" is an adult entertainment establishment; other places which are deemed adult entertainment establishments include any commercial establishment "wherein the entertainment consists of nude or substantially nude persons dancing with or without music or engaged in movements of a sexual nature or movements simulating sexual intercourse ...."

---

[30]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[31]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[32]     *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

(c) the City's ordinances defining and regulating adult entertain-
ment fail to serve or further a compelling or substantial govern-
mental interest, are not unrelated to the censorship of protected
speech and expression, are not narrowly tailored to avoid unlawful
infringement of speech or expression; and

(d) the City's ordinances defining and regulating adult entertain-
ment confer unbridled discretion to the administrative officials to
punish or stifle speech.[33]

These claims fail for a number of reasons, each of which the Court will address

in turn.

As an initial matter, paragraph 32(a) seems to be copied-and-pasted from

some other unrelated complaint. Atlanta's Code does not contain a section 15-

28(b), nor does it use the term "sexually oriented business" for regulating adult

businesses. Because paragraph 32(a) does not give the Defendants "fair notice

of what the claim is," this claim can be easily dismissed.[34]

Next, the Plaintiffs' remaining constitutional claims – subparagraphs

32(b)-(d) of the Amended Complaint – fail because they are barred by the

doctrine of claim preclusion. The doctrine of claim preclusion bars a claim

whenever "(1) a court of competent jurisdiction has (2) rendered a final

judgment on the merits in another case involving (3) the same parties and (4)

the same cause of action."[35] All four of these requirements have been met by

---

[33]     Am. Compl. ¶ 32(a)-(d).

[34]     *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214
(11th Cir. 2010).

[35]     *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116–17 (11th Cir. 2010).

previous litigation between these parties in both state and federal courts. Both suits were between the same parties as this action,[36] both were conducted in a court of competent jurisdiction to address any of the Plaintiffs' constitutional claims,[37] and the courts in both instances reached a final judgment on the merits. The first three elements for claim preclusion are clearly met.

The only remotely open question is whether those suits involved the same claim. The Eleventh Circuit has made clear that "for res judicata purposes, claims that could have been brought are claims in existence at the time the original complaint [was] filed."[38] Whether claims could have been brought are judged by whether they share the "same common nucleus of operative fact."[39] But, former judgments do "not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants."[40] Thus, even though both suits occurred many years

---

[36]     Though only Cheshire Visuals was involved in that action, it is in privity with Cheshire Bridge Holdings.

[37]     *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."). *See also* GA CONST. art. VI, § IV (designating superior courts as trial courts of general jurisdiction).

[38]     *Shurick*, 623 F.3d at 1118 (quotations omitted).

[39]     *Id.* at 1117.

[40]     *Stover v. Tipton*, 252 Ga. App. 427, 428 (2001).

ago, as long as the factual circumstances in existence then were similar enough that the Plaintiffs could have brought their constitutional claims during that suit, they will be precluded from bringing them now. More specifically, if the Plaintiffs could have challenged the constitutionality of the same definitions of three types of adult businesses back then that they do now – namely, adult bookstores, adult entertainment establishments, and adult mini-motion picture theaters – then their challenges must fail.

Very few substantive changes have been made to these definitions between the 1987 Code and the present. All three versions of the Code (1987 Code, 1996 Amendments, and the Current Code) all define "adult entertainment establishments" in relevant part as "[a]ny place of business or commercial establishment. . .where the patron directly or indirectly is charged a fee to engage in personal contact by employees, devices or equipment. . . ."[41] Likewise, all three codes define an "adult mini-motion picture theater" as "[a]n enclosed building. . .with a capacity for less than 50 persons used for presenting material distinguished or characterized by an emphasis" on its sexual nature.[42] The 1996 Amendments and Current Code do include added language further defining such

---

[41]    *Compare* 1987 Code § 16-29.001(e) [Doc. 30-6] *with* 1996 Amendments § 3(e), at 7 [Doc. 30-7] *and* Current Code § 16-29.001(e) [Doc. 30-10].

[42]    *Compare* 1987 Code § 16-29.001(3)(c) [Doc. 30-6] *with* 1996 Amendments § 3(c), at 7 [Doc. 30-7] *and* Current Code § 16-29.001(3)(c) [Doc. 30-10].

a theater as any "enclosed or semi-enclosed room or booth within an enclosed building," but as the Court explains later in this Opinion, this change in language does not have a material effect on this case.

The only substantive change between the 1987 Code and its successors relates to the definition of "adult bookstores." The 1987 Code defined "adult bookstores" as "[a]n establishment having as a substantial or significant portion of its stock and trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis" on sexual activity.[43] However, the 1996 Amendments and the Current Code include the sale of "films, videos, or other medium, or novelty items" within their definitions of adult bookstores.[44] Thus, if the Plaintiffs had the opportunity to challenge the constitutionality of the 1987 Code's definition of "adult entertainment establishments" or "adult mini-motion picture theaters," or the post-1996 Amendments definition of "adult bookstores," they would have had the opportunity to challenge the Current Code's definitions as well.

---

[43]     1987 Code § 16-29.001(3)(a) [Doc. 30-6].

[44]     1996 Amendments, § 3(a) [Doc. 30-7]; Current Code § 16-29.001(3)(a) [Doc. 30-10]. The 1996 Amendments and the Current Code definitions differ slightly in that 1996 Amendments only require a "preponderance" of an establishment's stock and trade to be sexually related, while the Current Code, like the 1987 Code, requires a "significant" portion. As there is no dispute about how much of the Plaintiffs' stock and trade is sexually related, however, this difference is immaterial in this case.

When the City denied the Plaintiffs' business license in 1996, the Plaintiffs had a number of options available to them. Obviously, they could have challenged the City's use of the 1996 Amendments in its denial of their application, which is what the Plaintiffs eventually did in Fulton County Superior Court. However, the Plaintiffs also could have challenged the City Code's definition of adult businesses more fundamentally in that litigation.

First, the Plaintiffs could have challenged the post-1996 Amendments definition of "adult bookstores" because the City was using that definition to deny them a license. They chose not to do so. Second, they could have challenged the Code's definition of "adult mini-motion picture theaters" in the federal lawsuit a few years later. By the time of that lawsuit, the Plaintiffs had already begun operating their "videoplexx," whether the City knew about it or not, and it was supposed to be regulated by the restrictions on "adult mini-motion picture theaters." Instead, they kept silent and did "not challenge the constitutionality of either the old or the new zoning ordinance."[45] Whatever their motivation, their strategic silence back then will not be rewarded now.

The only definition the Plaintiffs could not have challenged at that time was that of "adult entertainment establishments." Though there is evidence that the Plaintiffs' business currently falls under that definition, as it has at various points in its operation, there is no evidence that the Plaintiffs conducted such

---

[45] *Cheshire Visuals, LLC v. The City of Atlanta, Georgia*, No. 1:98-CV-3461-JOF at 5 (N.D. Ga. Feb. 22, 2001).

activities at the beginning of their business's inception or at the time of the federal lawsuit. Nor is there evidence that they always intended to do so, unlike the videoplexx.[46]

Thus, because the Plaintiffs could have challenged the definitions of "adult bookstores" and "adult mini-motion picture theaters" in the Fulton County Superior Court litigation, the Court finds that the four requirements for claim preclusion have been met regarding those definitions and the Plaintiffs are barred from challenging those provisions of the Code. However, because the Plaintiffs did not have the opportunity to challenge the definition of an "adult entertainment establishment" in that earlier litigation, the Plaintiffs are not barred from challenging that provision.

Regardless of the preclusive effect of the prior litigation, however, the Plaintiffs' challenges to all three definitions still fail on the merits. As stated above, the Plaintiffs make three First Amendment arguments: (1) the Plaintiffs specifically challenge the definition of "adult entertainment establishment" as overbroad,[47] (2) they argue the entirety of the Code's zoning regulation of adult businesses infringes protected speech, and (3) that the Code's adult business

---

[46]     *See* Defs.' SOF ¶¶ 37, 95.

[47]     The Plaintiffs reference "the City's definitions of adult business," but the only definitions they claim are overbroad come from the specific definition of "adult entertainment establishments." *See* Am. Compl. ¶ 32(b).

regulations constitute a prior restraint on speech by conferring unbridled discretion to City officials.

The Plaintiffs' facial challenge to the Code's definition of "adult entertainment establishments" as being overbroad fails for lack of standing. To bring a claim in federal court, plaintiffs must show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."[48] The Plaintiffs have not demonstrated that any purported injury they have suffered could be redressed by the Court. As discussed later in this Opinion, the Plaintiffs' business independently qualifies as an "adult mini-motion picture theater," making it a restricted adult business. Consequently, their use of the Property would still be prohibited by the Code regardless of whether the Court found the Code's definition of "adult entertainment establishments" unconstitutional as to other uses. In other words, the Plaintiffs lack standing to bring their overbreadth claim because it is not redressable.

The Plaintiffs next argue that the Code's zoning regulations in their entirety pertaining to adult businesses unconstitutionally burdens protected speech because those provisions "fail to serve or further a compelling or substantial governmental interest, are not unrelated to the censorship of

---

[48] *KH Outdoor, L.L.C. v. Clay Cty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (quotations omitted).

protected speech and expression, [and] are not narrowly tailored to avoid unlawful infringement of speech or expression. . . ."[49] Zoning ordinances limiting "where adult businesses may be located are evaluated under the three-part test for time, place, and manner regulations established in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). . . ."[50] The Eleventh Circuit states the test as:

> first, the court must determine whether the ordinance constitutes an invalid total ban or merely a time, place, and manner regulation; second, if the ordinance is determined to be a time, place, and manner regulation, the court must decide whether the ordinance should be subject to strict or intermediate scrutiny; and third, if the ordinance is held to be subject to intermediate scrutiny, the court must determine whether it is designed to serve a substantial government interest and allows for reasonable alternative channels of communication.[51]

In this case, there can be no doubt that the provisions at issue here are time, place, and manner restrictions. They do not ban outright any adult businesses, but merely restrict where they may be located. Next, the Court must decide what level of scrutiny is applied to the Code provisions by determining whether they are content-based or content-neutral.[52] "The Supreme Court has made clear

---

[49]     Am. Compl. ¶ 32(c).

[50]     *Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860, 870 (11th Cir. 2007).

[51]     *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla.*, 337 F.3d 1251, 1264 (11th Cir. 2003) (citing *Renton*, 475 U.S. at 46–50).

[52]     *Zibtluda, LLC v. Gwinnett Cty., Ga. ex rel. Bd. of Comm'rs of Gwinnett Cty.*, 411 F.3d 1278, 1286 (11th Cir. 2005) (citing *Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1280 (11th Cir. 2001)).

that when the purpose of an adult entertainment ordinance is to ameliorate the secondary effects of adult businesses, intermediate scrutiny applies."[53] "The evidentiary threshold the county faces in establishing this purpose is not high."[54] Generally speaking, courts need look no further than the ordinances themselves if they demonstrate any "legislative purpose independent of the legislature's hostility to the underlying message."[55] Here, the City made very clear when it adopted the 1996 Amendments that the primary purpose of the ordinances was to combat the secondary effects of adult businesses.[56] Thus, the Court finds that intermediate scrutiny should apply to the Code as challenged by the Plaintiffs.

Content-neutral government actions survive intermediate scrutiny if they are "designed to serve a substantial governmental purpose and allow[] for reasonable alternative avenues of communication."[57] Ordinances serve a substantial government purpose as long as the government has a "'reasonable basis'. . . for believing that its policy will indeed further a legitimate interest."[58]

---

[53]     *Id.* at 1284.

[54]     *Id.* at 1286.

[55]     *Id.* (quoting *Ranch House*, 238 F.3d at 1280). In *Renton* itself, the Supreme Court "looked no further than the ordinance itself, which recited as its purpose the protection and preservation of the quality of life in the city." *Id.*

[56]     *See generally* 1996 Amendments, at 1-3 [Doc. 30-7].

[57]     *Zibtluda*, 411 F.3d at 1285 (quoting *Renton*, 475 U.S. at 50).

[58]     *Artistic Entertainment, Inc. v. City of Warner Robins*, 223 F.3d 1306, 1309 (2000).

"This basis can consist of 'the experience of other cities, studies done in other cities, caselaw reciting findings on the issue, as well as [the officials'] own wisdom and common sense.'"[59]

The 1996 Amendments, on their face, meet this burden. In legislative findings preceding the actual language of the ordinance, the Mayor and City Council considered "studies regarding secondary effects of adult business on surrounding communities and the effect of said adult businesses on these communities from the cities of Minneapolis, MN, St. Paul, MN, Austin, TX, Oklahoma City, OK, and Indianapolis, IN," and found that "these studies [were] of direct relevance to the problems confronting the citizens of the City of Atlanta . . . ."[60] "These findings are facially sufficient to meet the low evidentiary burden local governments face when enacting ordinances to ameliorate secondary effects of adult businesses."[61] The Plaintiffs do not in any way dispute the evidence the City relied upon, nor do they argue that the Code fails to provide for reasonable alternative means of communication. Therefore, the Court finds that those provisions of the City Code that define and regulate adult businesses survive intermediate scrutiny.

---

[59]  *Zibtluda*, 411 F.3d at 1286 (quoting *Artistic Entertainment*, 223 F.3d at 1309) (alteration in original).

[60]  1996 Amendments, at 2 [Doc. 30-7].

[61]  *Zibtluda*, 411 F.3d at 1287.

Finally, the Plaintiffs argue that the City's ordinances are unconstitutional because they constitute a prior restraint on speech by conferring unbridled discretion to City officials.[62] Unlike some other jurisdictions, however, Atlanta's Code does not provide for the use of any discretion on the part of City officials.[63] As long as the criteria of the Code's zoning provisions are met, licenses must be granted as a matter of right. Such limited ministerial discretion pursuant to "precise and objective" standards is perfectly acceptable.[64] For this reason, the Plaintiffs' last remaining First Amendment argument also fails on the merits.

## B. Plaintiffs' Petition for a Writ of Certiorari

In addition to their First Amendment claims, the Plaintiffs also seek a writ of certiorari to be issued to the Atlanta Board of Zoning Appeals in order for this Court to review its decision to order the Plaintiffs to cease and desist their activities. In other words, the Plaintiffs are effectively asking this Court to exercise appellate review over the decisions of a state administrative agency.

---

[62] Am. Compl. ¶ 32(d).

[63] *See, e.g., Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999) (Finding a zoning ordinance to be an unconstitutional prior restraint on speech because it limited adult entertainment establishments to only two sites in the entire city without otherwise having to apply for an exception.).

[64] *Id.* at 1362 (". . .cases show that virtually any amount of discretion beyond the merely ministerial is suspect. Standards must be precise and objective.").

O.C.G.A. § 5-4-1 *et seq.* lays out a specific process for seeking a writ of certiorari in Georgia. First, a petitioner must file a petition with the superior court of the county in which the case was tried.[65] After obtaining the sanction of a superior court judge, the petition must then be filed with the clerk of the superior court.[66] This petition must then be served on the opposing party, and any requisite bonds posted.[67] The Plaintiffs have done none of these things, nor have they made any argument or cited to any authority to suggest that these procedures may be done away with in this case. For these reasons, the Plaintiffs' petition for writ of certiorari must be dismissed.[68]

### C. Defendants' Counterclaims

Having dispensed with the Plaintiffs' claims, the Court now addresses the City's counterclaims. The City seeks declaratory judgments finding that Cheshire Visuals' business license did not approve the operation of an adult business and that Cheshire Visuals forfeited their lawful nonconforming status.

---

[65]  O.C.G.A. § 5-4-3.

[66]  *Id.* at § 5-4-6(b)

[67]  *Id.* at §§ 5-4-5(a), 6(b).

[68]  There also seems to be an open question about whether this Court can even issue such a writ to a state organ like the Board of Zoning Appeals in the exercise of supplemental jurisdiction. Writs of certiorari are generally issued to inferior courts to facilitate review; indeed, that is what Georgia law seems to authorize them for. Of course, this Court is not superior to state courts, but is rather a parallel institution. In this way, writs of certiorari, as they are authorized by Georgia law, seem to be of a different species than run of the mill state claims that could normally be heard by this Court. However, the parties did not brief this issue, and so the Court does not definitively reach it.

The City also seeks a permanent injunction prohibiting the Plaintiffs from operating an adult business at the Property.

The first question the Court must answer is what types of activities were approved by the Plaintiffs' business license as originally granted by the City. That business license was ultimately approved under the 1987 Code, as required by the Fulton County Superior Court order discussed previously.[69] The 1987 Code allowed for the sale of adult videos and novelties without restriction in any area zoned for commercial use. The Plaintiffs' business license, therefore, clearly allowed them to sell adult videos and other novelties. It is axiomatic in this country, however, that no official is above the law. No City official could not have approved that which was illegal, and the 1987 Code did not allow for "adult businesses" – such as "adult mini-motion picture theaters" or "adult entertainment establishments" – to operate within 500 feet of a residential area.[70] It therefore follows that, because the Property is within 500 feet of a residential area,[71] the license did not allow the Plaintiffs to run an "adult business" as defined by the 1987 Code.

---

[69] Contrary to the Plaintiffs' contention, the Superior Court's order did *not* entitle them to operate an adult business at the Property. It merely required the City to apply the version of the City Code in effect at the time of their application, nothing more.

[70] Defs.' SOF ¶ 5.

[71] *Id.* at ¶ 2.

The Plaintiffs, meanwhile, argue that their business is a lawful nonconforming use that should be protected from enforcement under the Current Code. Under Georgia law, "[n]onconforming uses come into being initially as legal uses, and become nonconforming because of a subsequent change in zoning."[72] The City Code provides that a lawful nonconforming use "may be continued so long as it remains otherwise lawful . . . ."[73] Furthermore, "prior nonconforming uses are not absolutely protected from subsequent zoning regulations."[74] They are protected only to the extent they were lawful at their inception.[75] And should a use later become unlawful, it loses its protected status and becomes subject to the new zoning regulations.[76] Thus, the Plaintiffs' business qualifies as a lawful nonconforming use only if (1) it was lawful at its start, and (2) has continued to be lawful since. Otherwise, the business is subject to the City's current zoning code.

As just discussed, the Plaintiffs' business license did not allow them to run an adult business at the Property. And yet, the Plaintiffs have admitted

---

[72]     *BBC Land & Dev., Inc. v. Butts Cty.*, 281 Ga. 472, 473 (2007) (citations omitted).

[73]     Current Code § 16-24.005 at 1 [Doc. 30-9].

[74]     *Ralston Purina Co. v. Acrey*, 220 Ga. 788, 791 (1965).

[75]     *Id.*

[76]     *Id.* ("it is incumbent upon one seeking to use property for a nonconforming use after a rezoning ordinance to show that his prior use of the property was legal and not unlawful.") (citing *Troutman v. Aiken*, 213 Ga. 55, 55 (1957).

that they operated adult video booths from the beginning.[77] The 1987 Code defined an "adult mini-motion picture theater" as "[a]n enclosed building with a capacity for less than 50 persons used for presenting" adult videos to patrons, while similar buildings with capacity for more than 50 persons were defined as "adult motion picture theaters." Both types of uses are categorized as adult businesses and are restricted by the 1987 Code. The Plaintiffs' videoplexx seems to fall squarely under these definitions.

The Plaintiffs argue otherwise. The Plaintiffs first argue that the 1987 Code's definition of "adult mini-motion picture theater" did not apply to them because the Property had a capacity of more than 50 persons. But to the extent that this is true, it would simply mean that they would fall under the definition of an "adult motion picture theater," which was still prohibited.

Second, they seem to argue that the 1987 Code did not prohibit their video booths because it did not include "enclosed or semi-enclosed room or booth within an enclosed building," as was added by the later 1996 Amendments.[78] While it is true that the 1996 Amendments are more specific than the 1987 Code, that fact does not necessarily narrow the scope of the 1987 Code. If the video booths were covered by the plain language of the 1987 Code's definitions, the change in language of the 1996 Amendments is irrelevant. The 1987 Code

---

[77]     Defs.' SOF ¶ 37.

[78]     1996 Amendments, at 7 [Doc. 30-7] (emphasis added).

does not distinguish between a building and its subparts. It merely states that any enclosed building which is used to present adult videos to patrons is an adult business. And in this case, the Property was "an enclosed building," and it was used for presenting adult videos to patrons. It does not matter to the 1987 Code whether those videos were shown in a big room or in a closet. Both are considered adult businesses. Therefore, because the Plaintiffs operated an adult business at the Property from the very beginning of the business, and have continued to do so, their business cannot be said to be a lawful nonconforming use. Instead, it is subject to the Current Code.

Having decided that the Plaintiffs are subject to the Current Code, there can be no dispute that the Plaintiffs' current use of the Property is prohibited. The Plaintiffs operate an "adult bookstore" because they sell adult films and novelties. They operate an "adult mini-motion picture theater"[79] because they charge patrons to watch adult films in private booths within their establishment. And they operate an "adult entertainment establishment" because they charge patrons to engage in personal contact with equipment.[80] Furthermore, because these violations have been continuous, they constitute a public nuisance

---

[79]     Or "adult motion picture theater" depending on their size.

[80]     Defs.' SOF ¶ 73 ("Tokyo's videoplexx also includes open and private 'play' rooms, in which Tokyo provides a variety of bondage and domination (B&D) furniture and equipment for customers to use, including a cage, a swing, a stockade, and other devices to restrain a person in various positions.").

under the zoning code.[81] The Code empowers authorities to abate such nuisances by injunctive relief.[82] Given the Plaintiffs' continued violation of the zoning code, the Court finds that a permanent injunction is the best method of enforcing the goals of the City Code.

The Plaintiffs argue that the City should be equitably estopped from pursuing an injunction because they allegedly knew about the Plaintiffs' activities for years before seeking to stop them. This is essentially the equitable defense of laches, meaning that the City's delay effected a passive acquiescence and it would be inequitable for the Plaintiffs to be punished for something the City informally approved. However, the City only seeks a prospective injunction prohibiting the Plaintiffs from operating any adult businesses in the future. "[L]aches may not be used as a shield for future, independent violations of the law."[83]

And to the extent that any individual municipal officers were aware of the Plaintiffs' activities, Georgia law is clear that "[n]ot even estoppel can legalize or vitalize that which the law declares unlawful and void."[84] Even if City officials

---

[81]     Current Code, § 1-8(e) [Doc. 38-14].

[82]     *Id. See also Gray v. DeKalb Cty.*, 230 Ga. 95, 96 (1973) (holding that where statute specifically authorized relevant authority to obtain injunction, no requirement to show that it had no adequate remedy at law).

[83]     *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1005, n.32 (5th Cir. 1981).

[84]     *Corey Outdoor Advert., Inc. v. Bd. of Zoning Adjustments of City of Atlanta*, 254 Ga. 221, 224 (1985) (quoting *Flournoy v. Highlands Hotel Co.*, 170 Ga. 467, 471(1) (1930)).

knew and did nothing about the Plaintiffs' illegal activities, their delay – interpreted as passive approval – would be an *ultra vires* act. "The public may not be estopped by the acts of any officer done in the exercise of an unconferred power."[85] The 1987 Code and its successors prohibit adult businesses, such as the one run by the Plaintiffs, from operating within 500 feet of a residential district. Any pseudo-approval granted by the City's alleged delay in enforcing its ordinances was not – and could not be – legal, "and therefore there can be no estoppel."[86]

The Plaintiffs also argue that the City's proposed injunction amounts to an "obey the law" injunction, and is therefore too broad to be enforced.[87] Indeed, such orders are prohibited by the Federal Rules of Civil Procedure. Rule 56(d) requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required."[88] The key requirement is that "an injunction must contain an operative command capable of enforcement."[89] Thus, orders which contain language as general as the statute itself do "no more

---

[85]     O.C.G.A. § 45-6-5.

[86]     *Corey*, 254 Ga. at 224.

[87]     *See* Proposed Injunction Order [Doc. 79-1].

[88]     Fed. R. Civ. P. 65(d).

[89]     *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999).

than instruct a defendant to 'obey the law.' A court is incapable of enforcing so broad and vague an injunction."[90]

The City's proposed order, however, is not one of these. It specifically prohibits three acts: operating an adult mini-motion picture theater, operating an adult entertainment establishment, and operating an adult bookstore. It specifically defines each of these acts. And it specifically limits its scope to the Property in question. The City's proposed order complies with every one of Rule 56(d)'s requirements.[91]

Finally, the Plaintiffs argue that an injunction from this Court would violate "notions of comity" because the City still has state law remedies. The Plaintiffs cannot complain about the exercise of supplemental federal jurisdiction when they are the ones who brought this action to federal court in the first place. This Court's jurisdiction over the Defendants' counterclaim is proper.[92]

---

[90] *Id.* at 1201.

[91] The Plaintiffs also argue that the proposed injunction would act as a prior restraint on speech. The Court disagrees for the same reasons the Court disagreed with this argument regarding the ordinances themselves. The proposed injunction is not targeted at banning certain speech, but rather at regulating its location.

[92] *See* 28 U.S.C. § 1367(a).

## IV. Conclusion

For the reasons stated above, the Plaintiffs' Motion for Partial Summary Judgment [Doc. 39] is DENIED. The Defendant City of Atlanta, Georgia, et al.'s Motion for Summary Judgment [Doc. 37], however, is GRANTED.

SO ORDERED, this 3 day of January, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge